TUNNARD vs. LITTELL.

1. When a trust is sought to be raised as a resulting trust from the purchase money, the proof must be clear of the payment of the purchase money by the person in whose favor a trust is sought to be raised. Such a trust must also arise at the time of the execution of the deed. It cannot be raised from subsequent matter arising *ex post facto.*

2. An agreement to convey from one married woman to another, is inoperative and void.

3. To a bill by a *feme covert* by her next friend for her separate estate, her husband is a necessary party.

---

This cause was argued before the Vice-Chancellor, on bill, answer, and proofs.

*Mr. J. Whitehead,* for complainant.

*Mr. G. F. Tuttle* and *Mr. Keasbey,* for defendant.

THE VICE-CHANCELLOR.

The complainant, Mary M. Tunnard, wife of William F. Tunnard, by her next friend, John I. King, files her bill of complaint against Emma S. Littell, alleging that she holds in trust for complainant an undivided half interest in two lots, making together about eight acres of land, situated in Montclair, in the county of Essex, and praying that she be decreed to execute to the complainant a deed of conveyance therefor.

The lands were conveyed to the defendant by different parties, by two several deeds, on the 3d day of May, 1859, for

the total consideration of $4000. She was the wife of William M. Littell, who afterwards died in January, 1862. At the date of the deeds, her husband was one of the firm of Hedenberg & Littell, carriage-makers, in Newark, in this state. William F. Tunnard, the husband of complainant, resided in Baton Rouge, Louisiana, and was on intimate personal terms with Littell, having business connections with his firm.

The complainant alleges that the lands were conveyed to defendant in pursuance of an agreement between Littell and his wife, of the one part, and herself of the other part, for the purpose of homesteads thereon for their families; that, by said agreement, she and Mrs. Littell were to be equally interested in the premises; that each of them was to pay one-half of the price and expenses, and Mrs. Littell to take the title in trust for herself and complainant; that afterwards, and some time in 1859, Mrs. Littell signed and delivered to her a written agreement, certifying that the land was purchased and held jointly for herself and Mrs. Tunnard—the one-half held in trust for the latter to be conveyed to her when desired, through her husband, or in person; that this agreement has been lost, or mislaid, or cannot be produced; that in pursuance of the above agreement for purchase, the husband of complainant paid for her to Mr. Littell one-half of the cash payments made on the purchase, and that the moneys so paid by her husband amounted to $1349.29; that his last payment was made on the 12th of November, 1860, since which time the complainant has never been called on for further payments, though always ready and willing to pay whatever was her share; that during the late civil war her husband and herself resided in Baton Rouge, and were unable to make inquiries or obtain information of the premises; that in September, 1866, her husband was at Newark and called upon Mrs. Littell, who refused to convey to complainant any part of the land, or give him the information he desired in respect to it.

The bill was filed in September, 1866. The defendant, by

her answer, denies that she received the title in any wise in trust for the complainant, but alleges that when the premises were conveyed to her she supposed it to be for her use and benefit alone, and that she had no knowledge of any arrange-ment made with the complainant concerning the same; that the purchase occurred in consequence of a visit made by her and her husband in the, neighborhood, in the spring of 1859, when she was pleased with the situation, and requested her husband to buy it for her as a residence; that the purchase was made and the deed delivered to her before any proposi-tion was made that the complainant, or any other person, was to have an interest in the premises; that afterwards her hus-band informed her that it was arranged that Mr. Tunnard was to take half of the premises, as she understood, for his son, Frederick D. Tunnard, and not for his wife, the com-plainant; that she strenuously objected, whereupon her hus-band insisted that he had made the arrangement and must carry it out, and brought to her two deeds, dated the 30th of July, 1859, from him and herself to Frederick D. Tunnard; that overcome by his urgency she signed them, but when separately examined by the commissioner she refused to acknowledge them, and they were left in her possession; that afterwards her husband brought her a paper, which he said was a paper showing that the said Frederick D. Tunnard owned a half interest in the property, and peremptorily in-sisted that she should sign it, which she did, in order to avoid a difficulty with him, and being solemnly assured by her husband that Tunnard should not have an inch of the prop-erty, as Tunnard already owed him a larger sum than his share of the purchase money, and that it was a mere form, and not of the nature of a deed.

It was contended at the argument, that the complainant was entitled to a decree upon the ground either of an express or a resulting trust. That it cannot be upon the latter, is clear. The evidence of Tunnard and his wife is explicit upon the point that no part of the funds advanced by Tunnard to Lit-tell, and used by the latter in the purchase, belonged to the

complainant, or was her separate estate. They were entirely the moneys of her husband. The evidence is clear that the business was done by her husband; that she had no personal knowledge of the price or terms of the purchase. She testifies that she never heard any conversation between Littell and his wife, or either of them, with herself or with her husband, relative to the purchase, before it was made. Her knowledge of it was derived months afterwards from her husband. This is in direct contradiction of the agreement set forth in the bill, and is fatal to the maintenance of a resulting trust. When the trust is sought to be raised as a resulting trust from the purchase money, the proof must be clear of the payment of the purchase money by the person in whose favor a trust is sought to be raised. Such a trust must also arise at the time of the execution of the deed. It cannot be raised from subsequent matter arising *ex post facto*. *Cutler* v. *Tuttle*, 4 *C. E. Green* 549.

Nor can the complainant's case be maintained, in my judgment, on the ground of an express trust, created by the paper she is alleged to have given to Mrs. Tunnard. It is doubtful, from the proofs, whether the paper was given to her or to her son, Frederick D. Tunnard. I am inclined to the belief that it was given to the latter. Tunnard and his wife, and their son, were examined upon interrogatories, and all testified that it was made to her, but the documentary evidence afterwards adduced tends strongly to show that, in speaking of this point years after the paper was lost, their memories are wrong. When the purchase was made, Tunnard, the elder, was largely indebted to parties in New Jersey, and was endeavoring to effect, through Littell, a compromise settlement. This is proved by his letters, offered by the defendant and made exhibits in the cause. In his testimony he says: " The purchases were made for the joint interest of Mrs. Littell and Mrs. Tunnard; the deeds were made to Mrs. Littell, she giving my wife a simple obligation setting forth the facts, and agreeing to hold one-half in trust for her." The agreement was made, he says, in the winter of 1858 or 1859, and

concluded in the summer of 1859, at Mr. Littell's house in Newark. But in his letter to Littell, which the defendant afterwards produced, he writes under date of March 23d, 1859 : " I am glad you have succeeded in getting the mountain home. If you get the title I will either send you a check for my half of the cash payment, or you can draw on me at such times as you may think proper, taking care not to mature a draft on me in September, as I will not be here. If you have the title made, have the undivided half deeded to F. D. Tunnard, and I will arrange all satisfactory when I come on." He did not come on till the following summer, several months after the deeds had been given to Mrs. Tunnard. Writing again on the 27th of April, 1859, he says, speaking of the lands : " I wish you would send on a copy of the sale, so I can have before me the whole matter and acknowledge receipt of the payment I have made in Fred's name. You know I must not appear in the purchase at present. I will declare my residence there when I come on, and then I can make all right after a while." And yet in his testimony, before his letters were produced, he says that his son Frederick D. Tunnard's name was never, to his recollection, mentioned in any way or manner in connection with his having an interest in the premises ; that it was never contemplated or agreed that he should have an interest. His wife and his son testify to the same effect ; the testimony of all three illustrating the uncertainty of their recollection, and the danger of relying on their memory to establish the contents or legal effect of a paper executed and lost many years before. That the paper signed · by Mrs. Littell was to the son and not the complainant, is testified to by Mrs. Littell, and is rendered further probable by the fact that two deeds for the undivided half parts of the two tracts which the complainant seeks to recover, were drawn of the date of July 30th, 1859, to the son, in accordance with the directions contained in the father's letters. These deeds were signed by Littell and wife, but were never delivered ; the latter refusing to acknowledge them before the commissioner. They are exhibits in the cause. I cannot regard the

Tunnard *v.* Littell.

contents and effect of the paper as sufficiently proved to make it the basis of a decree.

But suppose it to have been made to Mrs. Tunnard. What is its effect? It is alleged to have been an agreement to convey an undivided half interest, whenever required. It was made long after Mrs. Littell became seized of the fee. It formed no part of the transaction of the purchase. The complainant's case, as made by the bill, assumes that it did, but the evidence makes it certain it did not. Mrs. Littell's testimony is, that her separate property was sold by her husband at her request and used in the purchase. Afterwards he told her what she admits she discovered, after his death, to be true, that Mr. Tunnard had paid him moneys for an interest in the land, and against her will she signed an agreement to convey; whether to the complainant or her son, makes no difference in respect to consideration, for it is not alleged that a consideration proceeded from either. It was an agreement to convey from one married woman to another, and is plainly inoperative and void. Another difficulty is this: the bill is filed by a *feme covert* by her next friend, for her separate estate. Her husband is not joined as a party, and the answer excepts to the omission, praying the same advantage as if the defendant had demurred. This exception is well taken. In *Johnson* v. *Vail*, 1 *McCarter* 428, it was held that in a suit by a wife for her separate estate, the husband is a necessary defendant. The declaration is there quoted as authoritative, that "there are numberless cases in which the wife has been allowed, through the medium of her *prochein amy*, to sue her husband in respect to her separate property; but I have not been able to find any case, either at law or in equity, in which she has been allowed to sue or be sued by a stranger, merely in respect of her separate property, without her husband being plaintiff or defendant."

The case itself, in its general character, presents but little to entitle it to the favorable regard of a court of equity. The husband of complainant, in his business with Littell, undoubtedly paid something to be invested in the purchase of these

lands.  He did not wish it to be known, because his creditors in New Jersey were numerous and their demands considerable.  This was the understanding between himself and Littell.  Neither this fact nor the fact that he paid anything, appears to have been known to the defendant.  The payments and credits allowed him by Littell, on the books of his firm, exceed, by $200, or thereabouts, his general indebtedness to the firm at the opening of the war, which indebtedness still exists.  The present suit is, in reality, plainly his own, in the name of his wife ; and in whatever aspect it is viewed, appears to me incapable of being maintained.

I shall advise that the bill be dismissed, with costs.