This is a bill to impress a trust in favor of the complainant for a one-half interest in property now standing in the name of the defendant. The cause was heard in the court of chancery, and at its conclusion the bill was dismissed. Upon complainant's appeal the court of errors and appeals set aside the decree and ordered a rehearing, and directed that the testimony of the vendors should be received.
The court says: "Since a trust of this character may be established by proof of circumstances tantamount to positiveproof, tending to evince that the person to whom the legal title passed was, in fact, not the person who was entitled according to the real intent and design of the parties to become *Page 102 
the real or beneficial owner, thereby imposing upon the actual vendee the status of a constructive trustee."
Laches was not pleaded, but the court of errors and appeals held that the parties were not surprised or prejudiced by the introduction of evidence to that effect. The answer as it now stands is amended to formally set up laches.
To understand the situation it is necessary to briefly recapitulate the facts. The bill was filed by Silverman, in 1922, seeking to have a deed to defendant, Klussmann, dated November 3d 1915, and promptly recorded, held in trust for Silverman and one Charles W. Ostrom. Ostrom disappeared in 1919 or 1920, leaving his affairs in great confusion, and careful search of his papers failed to disclose anything bearing on this transaction. The complainant saw Ostrom in Paris in 1921, and while he was at Camp Dix, before that time on visits to Jersey City he also saw him, but he made no efforts to inquire into this matter or see Klussmann. He states that he trusted Ostrom completely. Two years after Ostrom's final disappearance, Silverman filed the bill. He says that he and Ostrom were "fifty-fifty partners" in the property. It is admitted that the purchase price was $750. Silverman says he gave Ostrom the money in installments before the purchase, and then, again, that he borrowed the money to put the deal through, and that he advanced Ostrom for this purchase $1,200. He, however, claims only a half interest in a property which cost $750. He had numerous other dealings with Ostrom. Silverman admits that he never knew Klussmann.
Pursuant to the direction of the higher court, Mr. and Mrs. Lyons were produced at the rehearing. They are people of limited intelligence, and their testimony was not in any sense convincing. They could not remember just what they received, and they say: "Then Mr. Ostrom he went out and in a few minutes he came back and brought some more money and put it on the table." There is no proof whatever as to how much Ostrom advanced and what, if anything, Silverman advanced. These were the only additional witnesses for the complainant. *Page 103 
The defense is that Mr. Ostrom purchased this property with his wife's money and conveyed it to a nominee appointed by her brother. Mrs. Ostrom is a woman of intelligence, and her testimony impressed me as true. She owned considerable property, and, before her husband's financial difficulties, indictment and disappearance, he looked after all her affairs, deposited her funds, prepared checks for her to sign, and so forth. She says that she cannot remember from what bank she drew the money for the purpose of this transaction. That is not surprising, as the matter was seven years old at the time of the filing of the bill. However, she is positive that she advanced the money and always considered the property as hers.
An insurance agent was produced who testified that he placed insurance on the property at the direction of Klussmann, and kept it thereon from 1916. Ostrom alone was present when the deed was finally passed. Why should Silverman have advanced $1,200 for a property admittedly selling for $750?
The court of errors and appeals has indicated that "circumstances tantamount to positive proof" must be adduced. See, also, Cyc., Trusts 11 B 5 (c) 166; Parker v. Snyder,31 N.J. Eq. 164, 169; Tunnard v. Littell, 23 N.J. Eq. 264;26 R.C.L., Trusts §§ 75, 77.
I have carefully weighed the evidence in this case and have noted the attitude of the witnesses as they appeared on the stand. As I have said, I am impressed with the straightforward story of Mrs. Ostrom, corroborated by other witnesses, to wit, her two brothers. The witnesses for complainant were vague and indefinite, to say the least, and their stories do not impress me.
Another remarkable thing, to my mind, is that the complainant, although he admits he saw and talked with Ostrom several times from 1915 to 1920, should have made no effort to settle the controversies about this title until Ostrom disappeared and all the direct documentary evidence in the case had been lost. *Page 104 
I cannot bring myself to believe that, under the proofs presented in this case, a trust should be impressed upon this property. I believe, as a matter of fact, money was advanced by Mrs. Ostrom, as she says, and title taken by her direction in the name of her brother.
I shall therefore advise a decree dismissing the bill, with costs and counsel fee. I will hear counsel in this matter.